IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Perlean Griffin, et al., | Case No. 3:08 CV 1032 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Carleton S. Finkbeiner, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Gary Daugherty brings claims for wrongful termination under Title VII and Ohio civil rights laws. Daugherty alleges he was terminated in retaliation for protected conduct (complaining of discriminatory pay) and because he is African American. Defendants Carleton Finkbeiner and the City of Toledo filed a Motion for Summary Judgment on Daugherty's claims (Doc. No. 17). Daugherty filed an Opposition (Doc. No. 28), and Defendants filed a Reply (Doc. No. 29). For the reasons stated below, this Court denies Defendants' Motion as to the retaliation claim, but grants the Motion as to the discrimination claim.

## BACKGROUND

Daugherty was hired in January 2006 by the City of Toledo as an Administrator in the Department of Public Utilities. In this position, he was responsible for managing the City's Brownfield Redevelopment Program. His annual salary was $48,500, while his white predecessor in the position was paid $56,000, and his white subordinate was paid $49,000. When he took the job,

Daugherty raised the pay issue with Robert Reinbolt, the Mayor's Chief of Staff, who responded that Daugherty would receive a raise after ninety days if he "proved himself" (Daugherty Aff. ¶ 4).[1]

In March 2006, the City's Affirmative Action Director, Perlean Griffin, reported to the Mayor that certain African American male managers, including Daugherty, were being paid less than white counterparts. In addition, Daugherty assisted other African American employees in pursuing and investigating race discrimination complaints. Several of Daugherty's supervisors told him that he should not be involved in the discrimination complaints (Daugherty Aff. ¶¶ 12, 13).

After ninety days on the job, Daugherty raised the pay issue several times with various supervisors, including the Mayor. In July 2006, the Mayor allegedly shook his finger at Daugherty and told him he would have to do something "exceptional" to receive a raise (Daugherty Aff. ¶ 12). In February 2007, Daugherty submitted a written pay raise request, signed by his department head, to the Mayor; the Mayor never signed it.

On March 2, 2007, the City eliminated Plaintiff's position, citing budgetary constraints. On March 6, the Mayor told Daugherty that the City terminated his position because he did not "bust [his] ass enough" (Daugherty Aff. ¶ 20). In all, six City employees were terminated in the spring of 2007; two of them were African American (Reinbolt Aff. ¶ 8).

---

[1] Defendants note that much of the evidence offered by Daugherty is in the form of affidavits, some of which contain hearsay and opinion statements not properly considered on summary judgment. *See* Federal Civil Rule 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). The Court has taken care to consider only facts within the personal knowledge of the affiants and which otherwise satisfy the Rule.

The parties dispute whether Daugherty's position was filled after his termination. Defendants claim the position was not filled; Plaintiffs claim Daugherty's tasks were reassigned to other, white employees (Stephens Dep. p. 39).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

### Retaliation for protected conduct

*Prima facie case*

To establish a prima-facie case of retaliation, Daugherty must demonstrate that (1) he engaged in activity protected by Title VII; (2) Defendants knew of his exercise of those protected rights; (3) Defendants subsequently took an adverse employment action against him; and (4) there was a causal connection between his protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2004). In addition, because Daugherty's termination was part of a reduction-in-force, Daugherty must offer additional evidence "tending to indicate that the employer

3

singled [him] out for discharge for impermissible reasons." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004) (internal citations omitted).

There is no dispute that Daugherty engaged in protected activity (complaining about discriminatory pay and helping other employees pursue discrimination claims), or that Defendants knew of Daugherty's protected activity and subsequently took an adverse employment action against him. Daugherty therefore satisfies the first three elements of the required prima facie case. The central question is whether there was a causal connection between Daugherty's protected activity and his termination, such that Daugherty was impermissibly singled out for termination as part of the reduction-in-force.

This Court concludes that Daugherty has presented enough evidence in this regard to establish a prima facie case. First, several of Daugherty's supervisors told him that he was not to speak with Affirmative Action Director Griffin or assist her in investigating race discrimination complaints. Second, Daugherty was informed that he was on the termination list a short two weeks after he submitted a pay raise request to the Mayor for approval. That raise would have remedied the pay discrepancies which Daugherty had challenged as discriminatory.

*Legitimate, Nondiscriminatory Reason*

Because Daugherty has satisfied the elements of a prima facie case, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for the adverse employment action. "This is merely a burden of production, not of persuasion," which is satisfied if the defendant "simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (internal citations omitted). Here, Defendants claim Daugherty's position was eliminated due to budgetary constraints. This claim is

supported by ample evidence that the City was under financial stress at the time, and Defendants have therefore met their burden.

*Pretext*

The burden then shifts back to Daugherty to show that Defendants' proffered reason was a pretext for discrimination. Daugherty can establish pretext by showing that the stated reason (1) had no basis in fact, (2) was not the actual reason, or (3) was insufficient to explain Defendants' decision. *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002). In addition, Daugherty must show that the *real* reason for his termination was discrimination or retaliation for protected conduct. *Id.*

There is conflicting evidence about Defendants' motivation for the termination. Defendants' central theme in this case is that Daugherty's termination was for budgetary reasons. However, there is evidence the Mayor told Daugherty he was fired because of poor performance -- specifically, that he "didn't bust his ass enough." To be sure, a performance-related termination would not itself provide a basis for a retaliation claim. But the evidence of inconsistent explanations (budget versus performance) could lead a jury to conclude that the budget rationale advanced by Defendants was not the actual reason for Daugherty's termination.

There is also evidence that Daugherty's Brownfield supervisor position was funded mainly through grants that were independent of the City's normal operating budget, which casts some doubt on the factual basis of the City's budget rationale. This is a material, disputed fact issue, and, again, a jury could reasonably conclude that budget pressure was not the actual reason for Daugherty's termination.

5

Moreover, as explained above, Daugherty has offered evidence from which a jury could conclude that the *real* reason for termination was retaliation for prohibited conduct. Specifically, Daugherty was told by supervisors not to engage in the protected conduct of assisting with race discrimination investigations. And he was placed on the termination list shortly after his final act of protected conduct -- requesting a pay raise from the Mayor, which would have remedied his allegedly discriminatory pay. To be sure, retaliation is not the only possible inference. For example, a jury might also conclude that Daugherty was fired because the Mayor viewed him as "lazy," or that Defendants' budget rationale was legitimate. But this Court cannot usurp the jury's role of choosing among those competing inferences. Accordingly, summary judgment for Defendants is inappropriate on the retaliation claim.

**Discrimination**

To establish a prima facie case of discrimination under Title VII, Daugherty must show that (1) he is in a protected class; (2) that he was terminated; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the protected class received the job. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Defendants do not contest the first three elements but claim Daugherty's position was never filled after his termination. However, Daugherty points out that within six or eight months of his termination, his Department promoted a white employee to an Environmental Specialist position, with many of the same duties previously performed by Daugherty. Thus, there is at least a disputed issue of fact as to whether Daugherty has satisfied the fourth element of the prima facie case, so summary judgment is inappropriate on this ground.

As explained under the discussion of the retaliation claim, Defendants have satisfied their burden of providing a legitimate, nondiscriminatory rationale, and Daugherty (through evidence of

6

Defendants' inconsistent explanations) has shown that the proffered reason may be a pretext. But there is a final hurdle for Daugherty to overcome: he must offer some evidence that the *real* reason for his termination was discrimination. *See Virts*, 285 F.3d at 521.

There is simply no evidence that the termination was racially motivated. Daugherty points to a number of incidents during his tenure that he interprets as evidence of racial bias by City administrators, but most involve other employees and have no connection to the decision to terminate Daugherty. The one piece of evidence concerning Daugherty himself is his alleged discriminatory pay, but again, there is no connection between his low pay and the termination. To the extent Daugherty argues the termination was based on his *complaints* about discriminatory pay, that claim falls squarely within the rubric of retaliation, as discussed above. Accordingly, summary judgment in favor of Defendants is appropriate on Daugherty's discrimination claim.[2]

## CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment is denied as to Daugherty's retaliation claim, and granted as to Daugherty's discrimination claim.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 2, 2010

---

[2] For similar reasons, Daugherty cannot rely on a "mixed motive" analysis for his discrimination claim. Mixed motive cases require at least some evidence that race discrimination was a factor in the adverse employment decision. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008). There is no such evidence here.